43

Rcpt # 150003899

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                    **Plaintiff,**

v.

**ADVOCATE HEALTH, LLC**
d/b/a **ADVOCATE HEALTH ADVISORS,**
a Florida limited liability company,

**DARWIN RAMON HALE, JR.,**
an individual,

**ANJLI JOSHI**
a/k/a **ANJLI SAIGAL,**
an individual, and

**JESSICA LYNN DIARSE**
a/k/a **JESSICA LYNN KEYS** ,
an individual,

                    **Defendants.**

Case:2:23-cv-10330
Judge: Edmunds, Nancy G.
MJ: Stafford, Elizabeth A.
Filed: 02-08-2023 At 12:49 PM
CMP DOBRONSKI V. ADVOCATE HEALTH LLC ET AL (DA)

---

## **COMPLAINT**

    NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

    1.  This matter arises under the Telephone Consumer Protection Act of 1991

("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

## Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a place of business and residence in Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant ADVOCATE HEALTH, LLC ("Advocate"), is a limited liability company organized and existing under the laws of the State of Florida, with a principal office being located at 1845 Tamiami Trail South, Unit B, Venice, Florida 34293-3197.

4. Upon further information and belief, Advocate transacts business using the fictitious business name of ADVOCATE HEALTH ADVISORS.

5. Upon information and belief, Defendant DARWIN RAMON HALE, JR. ("Hale") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 1320 Ocelot Road, Venice, Florida 34293-6674.

6. Upon information and belief, Defendant ANJLI JOSHI ("Joshi") is an individual, of the age of majority, is mentally competent, is not in the military service,

2

and resides at 3135 Point of the Woods Drive, West Bloomfield, Michigan 48324-2152.

7.    Upon further information and belief, Joshi is also known as ANJLI SAIGAL.

8.    Upon information and belief, Defendant JESSICA LYNN DIARSE ("Diarse") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 810 Weaver Street, Cedar Hill, Texas 75104-9220.

9.    Upon further information and belief, Diarse is also known as JESSICA LYNN KEYS.

## Jurisdiction

10.    This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

11.    This Court has limited personal jurisdiction over Defendant Advocate, pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

12.    This Court has general personal jurisdiction over Defendant Joshi, pursuant to M.C.L. § 600.701, as a result of the defendant's presence in the state at

the time when process is served; and/or the defendant's domicile in the state at the time when process is served.

13. This Court has limited personal jurisdiction over Defendants Hale and Diarse, pursuant to M.C.L. § 600.705, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

14. In addition, Defendants Advocate, Hale, Joshi, and Diarse each are licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as insurance producers to sell, solicit, and negotiate insurance in the state of Michigan.

## Venue

15. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

16. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

4

17.     According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

28.   Congress explicitly found that robo-calling is an invasion of privacy.

29.   In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

30. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

31.  In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:   www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

32.  Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

33.  As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

34.  The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

> "Restrictions on use of automated telephone equipment
>
> (1) Prohibitions  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for

6

which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

35. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

36. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes

telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet

the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the

call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

37. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

38. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

> "PRIVATE RIGHT OF ACTION. **A person or entity**
> may, if otherwise permitted by the laws or rules of court of
> a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this **subsection or the
> regulations prescribed under this subsection** to enjoin
> such violation,
>
> (B) an action to recover for actual monetary loss from such
> a violation, or to receive $500 in damages **for each such
> violation**, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly
> violated this subsection or the regulations prescribed under
> this subsection, the court may, in its discretion, increase the
> amount of the award to an amount equal to not more than
> 3 times the amount available under subparagraph (B) of
> this paragraph." [Emphasis added.]

39. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the

FCC adopted regulations establishing a national "do not call" database and

prohibiting any person from making or transmitting a telephone solicitation to the

telephone number of any subscriber included in such database, which regulations are

set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone
> solicitation to:...
>
> "(2) A residential telephone subscriber who has registered
> his or her telephone number on the national do-not-call

11

registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

40. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

"Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

41. The "do not call" proscriptions also are applicable to cellular or wireless

12

telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

> "The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

42. The FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". <u>See</u> *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

43. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...
>
> (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:
>
> (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.
>
> (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the

display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

44. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

45. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or

14

otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

46.   The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

47.   Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.   Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have

been issued against Plaintiff for alleged drug trafficking and money laundering activities.

48.  Plaintiff's residential telephone numbers are ***-0222, ***-1090, and ***-1212.

49.  Plaintiff's cellular telephone number is ***-9671.

50.  Plaintiff utilizes his cellular telephone primarily for personal, family, and household use.

51.  Plaintiff's residential telephone numbers ***-1212 and Plaintiff's cellular telephone number ***-9671 are each listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least December 9. 2004 and at all times subsequent thereto.

52.  Plaintiff's residential telephone number ***-1090 was listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and was so listed continuously since at least May 2, 2020 and at all times subsequent thereto until approximately May 27, 2022 when Plaintiff had the telephone number disconnected due to telephone harassment.

53.  Plaintiff's residential telephone number ***-0222 is listed on the National

Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least August 24, 2022 and at all times subsequent thereto.

54. By listing his residential and cellular telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

55. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

56. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank*

*of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

57.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

58.  At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

59.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

60.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

61.  At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

62.  At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the

Defendants.

63.  The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

64.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

65.  When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA.  *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for

violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

66. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

67. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

68. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

69. For each and every call alleged herein initiated to Plaintiff's telephone line,

Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

70. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

71. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

### Allegations Specific to this Complaint

72. Defendant Advocate is in the business of distributing life insurance.

73. Defendant Hale is the chief executive officer of Advocate, personally authorized, directly, had control over, and participated in the activities of Advocate, including its telemarketing activities complained of herein, and at all times had the

21

the ability to cease such activities.

74.   Defendants Joshi and Diarse (hereinafter the "Agents") are each either employees or authorized agents of Advocate.

75.   Advocate uses a multi-level marketing scheme termed a "Field Marketing Organization" ("FMO") that is well-established within the insurance industry.

76.   Under this model, FMOs contract directly with insurance carriers who then provide life insurance products that are sold through the FMO.

77.   The FMO then employs independent contractors, commonly known as "agents" who market and distribute the carrier's insurance products to consumers.

78. The FMO then assists by facilitating the entry of a contract between one or more of the FMO's several insurance carriers and the agent so that the agent may market the carriers' insurance products.

79.   As in a typical multi-level marketing scheme, agents can recruit other agents to become part of their selling organization at the FMO.   The selling organization above or beneath a particular agent is commonly referred to, respectively, as that agent's "upline" or "downline."

80.   An enrolled agent is eligible to earn commission's through the FMO's compensation plan for any insurance product that the agent sells, after the FMO first deducts its commission from the sale of the carrier's products.

81. The enrolled agent also earns commissions on insurance products sold by the enrolled agent's "downline" agents.

82. As part of its marketing program, Advocate sells telemarketing "leads" of consumers to its agents.

83. Advocate sells these leads to its agents at a premium price. Agents will spend hundreds, if not thousands, of dollars purchasing the leads, believing them to be people in dire need of insurance who have yet to be contacted.

84. In addition to telemarketing leads, Advocate also provides its agents with access to automatic telephone dialing platforms and services to facilitate telephoning consumers *en masse* to market the Advocate's insurance carriers' products.

85. These automatic telephone dialing platforms can store lists of telephone numbers (and, often, personal information) of consumers and use a random number or sequential number generator which has the capacity to select and initiate calls to persons from the stored lists of telephone numbers with no human involvement and only route the call to a telemarketing agent when a called person has actually answered the call.

86. Advocate promotes telemarketing to its agents as being essential if the agents want to be successful in marketing Advocate's insurance carriers' products, and that the "high quality" leads and automatic telephone dialing platforms supplied

by Advocate will facilitate the agent being successful.

87. Advocate is well aware of the TCPA and its restrictions upon telemarketing.

88. Advocate is well aware that the automatic telephone dialing platforms and telemarketing activities which it directs its agents to utilize are illegal and violate the TCPA.

89. The fact that many of telephone calls are placed using automatic telephone dialing systems is indicated when calls are received with multi-second delays and/or a "boink" or clicking sound is heard before a live telemarketer comes on the line, when the call is simply dead air, and when the caller identification number display is "spoofed" or manipulated to display a false telephone number.

90. The call centers initiating the automated telemarketing calls on behalf of Advocate are usually located outside the United States, typically in the Asian continent, and thus usually outside the reach of United States laws and law enforcement authorities.

91. The call centers, in turn, hire individuals to act as lead generators – known in telemarketing parlance as "ropers" – to pre-qualify called consumers as to whether the consumer meets the qualification criteria for specific insurance products.

92. The lead generator or "roper" will engage in deceptive and illegal

techniques to solicit consumers, including, *inter alia*: manipulating the caller identification such that the caller cannot be easily identified or called back; identifying with a false or generic-sounding business name; deliberately calling telephone numbers which appear on the National Do Not Call Registry; refusing to provide identifying information to the called party upon inquiry; uttering profanities to or otherwise threatening or harassing the called party if the consumer does not cooperate by expressing interest or providing requested personal information or the called party requests not to be called.

93. Once a lead generator or "roper" has a consumer who meets the qualification criteria – referred to in telemarketing slang as the "mark" – the lead generator will then live transfer the call to an Agent who will then attempt to close the sale of the insurance product to the consumer. It is usually only late at this stage that a called party might learn any identifying information as to the source of the telephone call.

94. When the lead generator or "roper" has a consumer who fails to meet the qualification criteria, the lead generator will immediately hang up without warning.

95. Advocate and the Agents all are well aware of the illegal tactics being used by their contracted call centers, but are deliberately indifferent to what is occurring so as to be able to represent that they are "unaware" of the illegal telemarketing

conduct.

96. In the past 12 months alone, Plaintiff has received well over 500 telephone calls from telemarketers who have falsified or "spoofed" their caller identification and who have identify as being with "Senior Benefits", "American Benefits", "Medicare Benefits" or similar generic sounding names, and during which call where Plaintiff was unable to develop the true identify of the ultimately responsible seller.

97. Because the telemarketers engage in such deceptive practices designed to conceal their actual identities, Plaintiff has had to engage in various investigative techniques to identify the sources of the telemarketing calls being received.

98. One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name. If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

99. As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the call centers that Defendants have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the call centers as additional named defendants.

100. Also as discovery progresses in this case, Plaintiff anticipates learning of

additional telephone solicitation calls for which Defendants or Defendants' agents are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

### Call Number 1

101. On January 19, 2021, at approximately 9:56 A.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1090.

102. The caller identification number displayed was 602-559-2495 and the caller identification name displayed was V11909555700098.

103. The caller identification name being displayed in the long number fashion as shown is characteristic of an automatic telephone dialing system being utilized.

104. Upon answering, Plaintiff Plaintiff observed a 4-5 second delay after saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "Michael with Medicare Supplement Advisors."

105. Michael then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

106. Michael the stated that he was transferring the call to a licensed agent.

107. After approximately 2 minutes on hold, the call disconnected.

108. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (602-559-2495) and received a recording that the

number was not in service.

Call Number 2

109. On November 2, 2021, at approximately 10:29 A.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1090.

110. The caller identification number displayed was 602-548-9976.

111. Upon answering, Plaintiff Plaintiff observed a 4-5 second delay after saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "Danny with Medicare Supplement Advisors."

112. Danny then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

113. As Plaintiff was responding to a question, Danny suddenly hung up.

114. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (602-548-9976) and received a recording that the number was not in service.

Call Number 3

115. On April 11, 2022, at approximately 11:39 A.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1090.

116. The caller identification number displayed was 574-413-7635.

117. Upon answering, Plaintiff Plaintiff observed a 4-5 second delay after

28

saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "David with Medicare Supplement Advisors."

118. David then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

119. As Plaintiff was responding to a question, David suddenly hung up.

120. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (574-413-7635) and received a recording that the number was not in service.

### Call Number 4

121. On July 14, 2022, at approximately 6:59 P.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1212.

122. The caller identification number displayed was 231-440-6884.

123. Upon answering, Plaintiff Plaintiff observed a 4-5 second delay after saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "David with Medicare Supplement Advisors."

124. David then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

125. As part of the "canary trap", Plaintiff gave the *faux* name of Allan Colson.

126. As Plaintiff was responding to further questions, Danny suddenly hung

up.

127. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (231-440-6884) and received a recording that the number was not in service.

### Call Number 5

128. On August 22, 2022, at approximately 11:13 A.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-0222.

129. The caller identification number displayed was 407-720-5208.

130. Upon answering, Plaintiff Plaintiff observed a 4-5 second delay after saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "Daniel with Medicare Supplement Advisors."

131. Daniel then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

132. As Plaintiff was responding to the question of whether Plaintiff had Medicare A or B insurance, Daniel suddenly hung up.

133. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (407-720-5208) and received a recording that the number was not in service.

Call Number 6

134. On November 1, 2022, at approximately 5:54 P.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-0222.

135. The caller identification number displayed was 407-216-5157.

136. Upon answering, Plaintiff Plaintiff observed a 3-4 second delay after saying "hello" before hearing a "boink" sound and then a live telemarketer came onto the line and identified himself as "Max with Medicare Supplement Advisors."

137. Max then proceeded to pre-qualify Plaintiff for life insurance, during which interview Plaintiff provided "canary trap" information.

138. As Plaintiff was responding to the questions, Max suddenly hung up.

139. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (407-216-5157) and received a reorder signal.

Call Number 7

140. On February 2, 2023, at approximately 10:07 A.M., Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1212.

141. The caller identification number displayed was 616-682-7276.

142. Upon answering, Plaintiff Plaintiff observed a 3-4 second delay after saying "hello" before hearing a click sound and then a live telemarketer came onto the line and identified herself as "Amber... with Medicare Supplement Advisors."

31

143.  Amber asked to speak with Allan Colson, which is the "canary trap" name provided during the course of Call Number 4, *supra*.

144.  Amber then proceeded to ask Plaintiff pre-qualifying questions.

145.  The call was then transferred to another agent who identified herself as "Anjli Joshi of Advocate Health Advisors."

146.  Joshi then proceeded to qualify Plaintiff for a Medicare supplement or other benefit plan.

147.  During the conversation with Joshi, at one point Plaintiff inadvertently referred to himself as "Robert" instead of "Allan".

148.  Plaintiff inquired of Joshi as to the identity of the person that initiated th call, noting the poor English displayed by the caller.  Joshi explained that the caller is a third party that her company uses that calls out to people and then routes the calls to her.

149.  Because Plaintiff claimed not to have his Medicare card with him and could not provide his Medicare identification number, Joshi was unable to look up information online.  Plaintiff stated that he would call Joshi back later when he had his Medicare identification number.

150.  Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (616-682-7276) and the line rang 10 times with no

answer.

<u>Call Number 8</u>

151. On February 2, 2023, at approximately 10:30 A.M. – within a few minutes of Call Number 7, *supra*, having terminated -- Defendants or Defendants' agent initiated a call to Plaintiff's residential telephone line ***-1212.

152. The caller identification number displayed was 616-727-0147.

153. Upon answering, Plaintiff  Plaintiff observed a 3-4 second delay  after saying "hello" before hearing a click sound and then a live telemarketer came onto the line and identified himself as "Bailey... with Medicare Supplement Advisors."

154. Bailey asked to speak with Allan Colson, which is the  "canary trap" name provided during the course of Call Number 4, *supra*, and the name which the caller asked to speak with during the course of Call Number 7, *supra*.

155. Bailey then proceeded to ask Plaintiff pre-qualifying questions.

156. The call was then transferred to another agent who identified herself as "Jessica Diarse of Advocate Health."

157. Diarse then proceeded to qualify Plaintiff for a Medicare supplement or other benefit plan.

158. As Diarse commenced asking questions of Plaintiff, Diarse referred to Plaintiff as "Robert Colson", which name Plaintiff had inadvertently referenced

himself at one point during Call Number 7, *supra*. Plaintiff "compensated" by stating

that his legal name is "Robert Allan Colson" but that he goes by "Allan Colson."

159. Plaintiff inquired of Diarse as to the identity of the caller that initiated the

call, noting how poorly the caller spoke English. Diarse responded that the caller was

"our transfer representative."

160. Plaintiff then complained about the excessive number of telemarketing

calls he was receiving pushing Medicare insurance and supplement policies and asked

for the identity of the "transfer representative." Diarse would not provide the name

of the "transfer representative" and provided Plaintiff with the telephone number of

her supervisor.

161. After the call terminated, Plaintiff noted that his telephone line had been

seized by Defendant's automatic telephone dialing system and took nearly one full

minute to release Plaintiff's line so that Plaintiff could make another call.

162. Plaintiff dialed the caller identification number displayed (616-727-0147)

and the line rang 10 times with no answer.

**COUNT I**
**VIOLATION OF THE TCPA - AUTODIALER CALL**

163. Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra*.

164. Each of Call Numbers 1 through 8 were in violation of the TCPA and its

implementing regulations, specifically 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R.

§ 64.1200(a)(1)(iii), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone line using an automatic telephone dialing system without the prior express consent of the called party and there being no emergency.

165. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - ABANDONED CALL

166. Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra.*

167. Each of Call Numbers 1 through 8 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

168. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - DO NOT CALL

169. Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra.*

170. Each of Call Numbers 1 through 4, and 6 through 8, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential

telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

171.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - FALSE IDENTITY

172.  Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra.*

173.   Each of Call Numbers 1 through 8, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants or Defendants' agent entity making the call for telemarketing purposes did provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

174.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

175.  Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra.*

176.  Each of the Call Numbers 1 through 8 were in violation of the TCPA

implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a  telephone number which would permit any individual to make a do-not-call request during regular business hours.

177.  The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VI
## VIOLATION OF THE MTCCCA

178.  Plaintiff incorporates the allegations of paragraphs 1 through 162, supra.

176.  Each of the Call Numbers 4, 7, and 8 were in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VII
## VIOLATION OF THE MHSSA

177.  Plaintiff incorporates the allegations of paragraphs 1 through 162, *supra*.

178.  Each of Call Numbers 1 through 4, and 6 through 8, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent

made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.    Damages:

  i.    Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|-----------|
| I | 8 |
| II | 8 |
| III | 7 |
| IV | 8 |
| V | 8 |

A total of 39 violations at $500 per violation

for damages of $19,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $58,500.00.

ii.    Damages for violations of the MTCCCA alleged at Count VI: 3 violations at $1,000 per violation, for damages of $3,000.00.

iii.   Damages for violations of the MHSSA alleged at Count VII: 8 violations at $250 per violation, for damages of $2,000.00.

The cumulative total amount of damages claimed in this action is $63,500.00,and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable,

prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 6, 2023

_Mark W. Dobronski_

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

**UNITED STATES POSTAL SERVICE**

■ Expected delivery date specified for
■ Most domestic shipments include u
■ USPS Tracking® included for domes
■ Limited international insurance.**
■ When used internationally, a custom

*Insurance does not cover certain items. For de
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.u

**FLAT RATE ENVE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSUF**

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

---

UNITED STATES POSTAL SERVICE   Retail

P   US POSTAGE PAID
$9.65
Origin: 48130
02/06/23
2525100130-09

PRIORITY MAIL®

0 Lb 10.70 Oz
RDC 22

EXPECTED DELIVERY DAY: 02/07/23   C052

SHIP
TO:   231 W LAFAYETTE BLVD
FL 6TH
DETROIT MI 48226-2777

USPS TRACKING® #

9505 5123 0482 3037 9938 76

USPS.COM®

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO: U.S. MAR

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

Case:2:23-cv-10330
Judge: Edmunds, Nancy G.
MJ: Stafford, Elizabeth A.
Filed: 02-08-2023 At 12:49 PM
CMP DOBRONSKI V. ADVOCATE HEALTH LL
C ET AL (DA)

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**(b)** County of Residence of First Listed Plaintiff   Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  PRO SE  Attorneys *(Firm Name, Address, and Telephone Number)*

### DEFENDANTS

ADVOCATE HEALTH, LLC;
DARWIN RAMON HALE, JR.;
ANJLI JOSHI; and JESSICA LYNN DIARSE

County of Residence of First Listed Defendant   Sarasota, FL

Case:2:23-cv-10330
Judge: Edmunds, Nancy G.
MJ: Stafford, Elizabeth A.
Filed: 02-08-2023 At 12:49 PM
CMP DOBRONSKI V. ADVOCATE HEALTH LL
C ET AL (DA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability    [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability    [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal    [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | Injury    [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights    **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment    [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations    [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment    [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other    **Other:**   [ ] 540 Mandamus & Other | **IMMIGRATION** | | |
| | [ ] 448 Education    [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Illegal Telemarketing Calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 63,500.00

CHECK YES only if demanded in complaint:

JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
February 6, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?    ☐ Yes  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)    ☐ Yes  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :